✓ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

4:19 pm, Sep 22 2021

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

1:21-mj-2627 to -2628 TMD

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Rachel S. Corn, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1.      I have been a SA with the FBI since May 2006.  Since September 2006, I have primarily investigated federal violations concerning child pornography and the sexual exploitation of children.  I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations.  Specifically, I have received FBI Crimes Against Children training, FBI Innocent Images Online Undercover training, and FBI Peer-to-Peer Network Online Investigation training.  I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses.  Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses.  I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography.  In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.     This affidavit is made in support of an application for a warrant to search the

following (hereinafter referred to as the "TARGET ACCOUNTS"):

    a.     The Google accounts associated with the email addresses:

        i.      mtmrapgodshit25@gmail.com;
        ii.     calvinsampson1998@gmail.com;
        iii.    calvinsampson16@gmail.com;
        iv.     hellfire2456744@gmail.com;
        v.      calvinsampson7@gmail.com;
        vi.     sampsoncalvin408@gmail.com;
        vii.    calvinsampson408@gmail.com;
        viii.   sampsoncj667@gmail.com; and

    b.     The Tumblr account associated with calvinsampson16@gmail.com and
User ID: 172912025;

4.     The TARGET ACCOUNTS are to be searched for evidence of violations of Title

18, United States Code, Sections 2251(a) (production of child pornography); Title 18, United

States Code, Section 2252A(a)(2) (distribution and receipt of child pornography): and Title 18,

United States Code, Section 2252A(a)(5)(B) (possession of child pornography) (the "TARGET

OFFENSES").

5.     The statements in this affidavit are based in part on information and reports

provided by Baltimore City Police Department and Special Agents of the FBI, on my investigation

of this matter, and on my experience and background as a Special Agent of the FBI.  Since this

affidavit is being submitted for the limited purpose of securing a search warrant, I have not

included each and every fact known to me concerning this investigation.  I have set forth only the

facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and

instrumentalities of the TARGET OFFENSES are located in the TARGET ACCOUNTS.

**SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO
POSSESS AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF
COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION,
RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY**

6.      Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view and receive images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

a.      Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.      Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer or cellphone, and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

e.      Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who

share the same interests in child pornography.  This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

f.      Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest.  Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images.  Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

g.      Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

7.      Based on my investigative experience related to computer and internet related

child pornography investigations, and the training and experience of other law enforcement

officers with whom I have had discussions, I have learned the following:

a.      Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which child pornography collectors interact with each other.  Child pornography formerly was produced using cameras and film (either still photography or movies.)  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images.  To distribute these on any scale also required significant resources.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public.   The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls.  Any reimbursement would follow these same paths.

b.      The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones and the internet serve four functions in connection with child pornography.  These are production, communication, distribution, and storage.

c.      Mobile devices such as laptop computers, smartphones, iPods, iPads and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

d.      Smartphones have the capability to access the Internet and store information, such as videos and images.  As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop.  An individual using a smartphone can also easily plug the device into a computer, via a

USB cable, and transfer data files from one digital device to another.  Many people generally carry their smartphone on their person.

e. Child pornographers can now transfer photographs from a camera onto a computer-readable format.  With the advent of digital cameras, the images can now be transferred directly onto a computer.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

f. Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

g. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.  Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo, and Google, Inc., Facebook, Dropbox, Instagram, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files.  The data is maintained on the servers of the providers, and is occasionally retained by the providers after the user deletes the data from their account.

h. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

i. Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found in the TARGET ACCOUNTS notwithstanding the passage of time.

j. In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost.

Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

k.      When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

l.      In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

m.      The storage capacity of personal computers has increased dramatically over the last few years. Common and commercially available hard drives are now capable of storing over 500 GB of data. With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

n.      Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Since the storage capacity of hard drives has increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

## GOOGLE ACCOUNT

8.      Google provides numerous free services to the users with a Google profile. Some

of services include, Gmail, Google Hangouts, Google Wallet, Google+, Google Drive, Google

Photos and Albums, and YouTube. Gmail is a web-based email service that can also be accessed

via mobile apps. In 2017, Gmail comes with 15GB of free storage and users can receive emails

up to 50 megabytes in size, including attachments, while they can send emails up to 25

megabytes. In order to send larger files, users can insert files from Google Drive into the

message. Emails remain in an active Gmail account until deleted by the user. Google Hangouts

is a communication platform which includes instant messaging, video chat, and SMS and Voice

Over IP (VOIP) features service that provides both text and voice communication. Google

Hangouts allows conversations between two or more users.  Chat histories are saved online, allowing them to be synced between devices. Google Wallet is a mobile payment system that allows its users to store debit cards, credit cards, loyalty cards and gift cards, among other things, on their mobile phones. Google+ is a social networking service.  Google Drive is a file storage and synchronization service, which provides users with cloud storage, file sharing, and collaborative editing.  Google Photos is an image hosting and sharing web service that allows users with a Google account to store and share images for free.  YouTube is a free video sharing website that allows users upload, view and share videos.

## TUMBLR

9.      Tumblr is a free microblogging and social networking website. Users can post multimedia and other content to a short-form blog. Users can follow other user's blogs. Bloggers can also make their blogs private.  The dashboard is the primary tool for the typical Tumblr user.  It is a live feed of recent posts from blogs that they follow.  Through the dashboard, users are able to comment, reblog, and like posts from other blogs that appear on their dashboard.  The dashboard allows the user to upload text posts, images, video, quotes, or links to their blog with a click of a button displayed at the top of the dashboard.  Users are also able to connect their blogs to their Twitter and Facebook accounts; so whenever they make a post, it will also be sent as a tweet and a status update.  Users are able to set up a schedule to delay posts that they make. They can spread their posts over several hours or even days.  Users are also able to use a custom domain name for their blog.  You can make your blog private or make specific posts private as needed.   Additionally, Tumblr users can send private messages to each other.

## PROBABLE CAUSE

10.     In March 2020, the Baltimore City Department of Social Services (DSS) and the Baltimore City Police Department began an investigation into Calvin Henry Sampson, III, for sexual abuse and recording of the sexual abuse of several minor females, Jane Doe 1, Jane Doe 2, and Jane Doe 3, all sisters, born in 2010, 2014, and 2016.

11.     On approximately March 3, 2020, Sampson's girlfriend and S.J., the minor victims' mother, observed inappropriate pictures of Sampson and the three minor children located in Sampson's Google Photos account.  The victims' mother described the pictures as depicting Sampson ejaculating on the minor females.  The mother also observed a video of Jane Doe 1 performing oral sex on an individual whom she believed was Sampson.  The mother explained that Sampson's face and her daughters' faces were not depicted in all of the pictures and videos.

12.     On March 12, 2020, Jane Doe 1 was interviewed and disclosed that her cousin, who she identified as Calvin, rubbed his "private area" on her, touched her private area with his hand, told her to "suck it," and that he licked her private area.  Jane Doe 1 said that "white stuff" came out of his private area and that he put the white stuff on her private area.  She said Calvin took pictures of her private parts, backside, and Calvin's private area on her with his phone.  Calvin told her she would get in trouble if she did not do it.  Jane Doe 1 stated that the first time something like this occurred was when she was 7-years-old when Calvin visited her family and that the first time occurred in a bathroom.  During the first time, Calvin had Jane Doe 1 sit on top of a toilet with her knees up and took a picture of her butt.  Jane Doe 1 said that Calvin took the pictures with his old phone that is now broken and that Calvin has since gotten a new phone.

13.     On March 12, 2020, Jane Doe 2 was interviewed and disclosed that her cousin, who she identified as Calvin, took pictures of her private area and butt.  Jane Doe 2 stated that Calvin put his finger in her private area and put his private area on her private area.  Jane Doe 2 stated

Calvin "peed" on her and used a blanket to wipe her.  Calvin told Jane Doe 2 if she told her mother she would get in trouble and get a "butt whooping."

14.     On March 12, 2020, Jane Doe 1, Jane Doe 2, and Jane Doe 3 were also examined by a medical doctor at the Baltimore Child Abuse Center.  During the examination, the doctor took photographs of their genitalia.

15.     On March 25, 2020, state search warrants for the Google accounts mtmrapgodshit25@gmail.com,               calvinsampson1998@gmail.com               and calvinsampson16@gmail.com were submitted to and granted by Honorable Associate Judge Mark Scurti in the Maryland District Court for Baltimore City.  On March 25, 2020, the search warrant was executed when it was served on Google and the results were saved to an external hard drive.

16.     A review of the Google Photos associated with calvinsampson16@gmail.com revealed the following:

- A picture of a Maryland Learner's Instructional Permit card in the name of Calvin Henry Sampson 3rd.
- A picture of a Social Security Card in the name of Calvin Henry Sampson III.
- An earning statement in the name Calvin Henry Sampson.

17.     The review of the Google Photos associated with calvinsampson16@gmail.com also revealed at least eight videos, two gifs[1], and twenty-nine images that appear to be homemade.  One of the videos depicted a prepubescent female performing oral sex on an adult male.  Another video depicted a prepubescent female laying down with her legs straight up in the air and her vagina is exposed to the camera.  A male is masturbating and ejaculates on the female's vagina.  The prepubescent female, who face is not depicted in the video, is laying on a gold and maroon blanket.  S.J. provided the gold and maroon blanket to law enforcement advising that she had seen the blanket is some of the files she observed on Sampson's cell phone.  A third video, titled

---

[1] A Gif is an animated image.

"Snapchat-1320205566.mp4," depicted two fingers pulling down pink pants and underwear and exposed a buttock.  The twenty-nine images depicted a close up of prepubescent females' exposed genitalia and/or anus.  In some of the images and videos a hand or finger(s) can be seen.  In some of the pictures, the genitalia appears to be the same when compared to the medical pictures taken on March 12, 2020, of Jane Doe 1 and Jane Doe 2.

18.     Many of the homemade images contained EXIF metadata which revealed the date and time the pictures were created, the make and model of the camera that took the pictures, and the GPS coordinates of where the pictures were taken.  The dates were between December 11, 2017, and February 26, 2020.  The various cameras used to take the pictures were a Samsung SM-G550T1, a Samsung SM-J327P, a Samsung SM-J327P4, a ZTE Z981, and a Coolpad 3622A.  All of the GPS coordinates, except for two images[2], corresponded at or near S.J.'s house where she resided with her three daughters and Sampson.

19.     On approximately April 11, 2020, Sampson was arrested by a Baltimore City Police Officer.  Sampson was charged with Sexual Abuse of a Minor, Third Degree Sex Offense, and Second Degree Assault.  These charges are related to a separate investigation regarding a minor female, Jane Doe 4, born in 2008.  Sampson has been held without bond since the time of his arrest.

20.     On May 6, 2020, United States Magistrate Judge Charles B. Day, of the District of Maryland, granted search warrants for the Google accounts hellfire2456744@gmail.com, calvinsampson7@gmail.com, sampsoncalvin408@gmail.com, calvinsampson408@gmail.com, and sampsoncj667@gmail.com and the Tumblr account calvinsampson16@gmail.com and User ID: 172912025.  The search warrant results from Google and Tumblr were received and saved to

---

[2] The GPS coordinates for the two images corresponded to another residence in Baltimore City.

the same external hard drive as the state search warrant results for the Google accounts listed in paragraph 15.  To prepare for grand jury, the images and videos described in paragraph 17 were saved to a separate disc.

21.     On October 26, 2020, a grand jury sitting in the district of Maryland returned a five-count indictment charging Sampson with Production of Child Pornography and Possession of Child Pornography (United States v. Calvin Henry Sampson, III, RDB-20-0366).

22.     In March 2021, the external hard drive containing the saved Google and Tumblr search warrant results became inoperable and the data saved to the drive was inaccessible.  The external hard drive was sent to the FBI's Digital Forensic Analysis Unit to try and recover the data saved on the external hard drive.  On September 14, 2021, the examiner from the Digital Forensic Analysis Unit advised he was unable to recover any of the data on the damaged external hard drive.  Therefore, these warrants are sought in an effort to obtain the information from Google and Tumblr, and to preserve/analyze same.

## CONCLUSION

23.     Based on the foregoing information, I have probable cause to believe that contraband, evidence, fruits, and instrumentalities of the TARGET OFFENSES as set forth herein and in Attachments B1 and B2, are currently contained in the TARGET ACCOUNTS, more fully described in Attachments A1 and A2.  I therefore respectfully request that search warrants be issued authorizing the search of the accounts described in Attachments A1 and A2, for the items described in Attachments B1 and B2, and authorizing the seizure and examination of any such items found therein.

*Rachel S Corn*
Special Agent Rachel S. Corn

Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and Fed. R. Crim. P. 41(d)(3) this 20 day of September, 2021.

_____
HONORABLE   THOMAS M. DIGIROLAMO
UNITED STATES MAGISTRATE JUDGE